Oral argument not to exceed 15 minutes per side. Mr. Chancey for the appellant, the comment. Please the court, Franklin Chancey on behalf of the appellant, Monica Crox, I would like to reserve three minutes, please. Your Honor, there is a vast and expanding universe of precedent in court's consideration of ERISA plan determinations. From that, I think that there are three principles that are now becoming firmly established in that precedent. The first is that in order to vest a plan administrator with discretionary authority, the grant of that authority has to be explicit and clear without any ambiguity in it. Is it not very clear here? I don't think so, Your Honor. In multiple ways. There's discretionary authority in the plan, doesn't it? It does indeed, Your Honor. It does indeed. And I concede that the plan begins with what would appear to be a very explicit grant of that authority. The problem is that you can't read that sentence out of the context of the rest of the plan language. And that language limits then the authority that's given to the administrator in two particular ways. The first way is that it goes on to then say that the administrator's decision must be, quote, reasonable. Now, this Court has long taken the position that plan provisions in ERISA cases should be interpreted according to their plain meaning in an ordinary and popular sense. That's the Perez v. Aetna Life case. What is the definition of reasonable? Now, I would suggest that the ordinary definition of reasonable is something along the lines of fair and sensible, having sound judgment, or reasonable, fair, proper, or moderate under the circumstances. That's the Black's Law Dictionary version of it. Do you have a good case that explains language like this in a similar plan? I don't, Your Honor. But this Court, in particular, has issued a lot of decisions that, frankly, would suggest that there's multiple meanings to that term. Looking at ones that I think are favorable to our side, the Thacker case, for example, used this language. Administrator's decision was reasonable, therefore not arbitrary and capricious. Well, I don't disagree with that statement, but it's not the same thing to say that reasonable means not arbitrary and capricious, which is what's urged by the defendant in this case. In the Wooden case, this Court said as long as there is evidence to support a reasonable explanation to deny benefits, the decision is not arbitrary and capricious. I would submit to the Court that the ordinary and plain meaning of that language requires, by its definition, an objective look at the evidence that's being considered by the plan administrator. By definition, reasonable implies that it's an objective standard, which would require a de novo review. I also would point out to the Court— So you're saying that if the plan language gives discretion to the administrator, but then also says that he needs to be reasonable, that means our review is de novo? I think in this particular case, what the precedents have said is that if the grant of discretion to the administrator is subject to more than one interpretation, then those cases require de novo review. Arbitrary and capricious is known in the legal world by everybody as encompassing reasonableness. Well, except that, Your Honor, the cases say that the language is not intended to communicate to lawyers and judges. It's intended to communicate the information to the ordinary person who's the beneficiary of those plans. In this particular case, no ordinary person on the street would conclude that the word reasonable means not arbitrary and capricious. They would assign to it the normal meaning of that word, which is fair, moderate. Now, that's not the end of the analysis with respect to this plain language, though, because there's a second part of it, which is much more disturbing, but when read together buttresses what we're saying to the court. The plain language then goes on and says that you can appeal your decision to court, you can seek a review of a court, and the court will determine the standard of review in the case. And the court always does do that. Respectfully, Your Honor, in this particular case, the appellee is suggesting to the court that because of the grant of authority, that the review in the case and the standard of review is going to be the arbitrary and capricious standard. Suggesting it to the court, where the court will make the decision. I mean, that language almost sounds exactly like what you get in a criminal plea agreement, where it says, you know, we're going to do certain things and this is our advice, but the judge can do whatever she wants. There's nothing wrong with that language. They're arguing that you can't do that, and that in fact the district court had no discretion, that the plain language required the review under the arbitrary and capricious standard. Counsel, let me ask you one thing of what you were just saying in terms of, you were saying it might convey something to lawyers but not to the beneficiary. But with respect to what the standard of review is, that doesn't seem to me to be the sort of thing that has, you know, when we talk about what does the summary plan description convey, that's not something that the beneficiary is really concerned with, are they? We disagree, Judge Boggs. In fact, it's vitally important because does the plan convey to the beneficiary the importance of developing the medical evidence early in the administrative process that's going to then be reviewed? Or does the plan suggest to the person that this is an opportunity for an appeal reviewed by a judge under a look at the evidence in the case? And that's been recognized by some other courts. The Seventh Circuit used the language, would an ordinary person conclude the district court would make a benefit determination from its own review of the evidence, or would they conclude it is limited to is there evidence to support the decision? What's that cite? That is Diaz v. Prudential. It's cited in our brief, Your Honor. It's a Seventh Circuit 2005 case. Let me ask you something from your brief because, you know, the standard of review is important, but you also then start to get into the details. And on page 7 of your brief is the discussion of whether she's unable to perform any gainful occupation. The rehab specialist identified sedentary jobs. And then this is the sentence from your brief. Each of the sedentary jobs identified by the specialist requires skill sets that Crocs would encounter difficulty in performing, comma, the very definition of sedentary work. Well, the definition Now, what does that mean? Is there a typo there? I understood it up to the comma. And then suddenly it says that requiring skill sets that she couldn't perform is the very definition of sedentary work. Well, the definition of sedentary work in the plan included things like handling stress, talking, working under specific instructions, dealing with people. In the medical record in the case, there's multiple instances of doctors concluding that she had impaired speech, that she had occasions where if she stood up that she sometimes passed out, that she had difficulty talking, difficulty walking in different places. So there's multiple areas in the record where those are required. The concept you're saying is that those skill sets are a necessary component of all sedentary work. Would that be a better statement of it? It's a necessary component of the types of jobs that the plan administrator's decision said that she could do. And it listed two or three kinds of insurance clerks, a couple of others that escape my memory right now. That's what the voc rehab specialist said. But I'm trying to focus on this sentence about the very definition of sedentary work. Well, it is defined in the plan what sedentary includes. Includes or requires. That's my question. There's a big difference between whether things are illustrative of something that are included as opposed to being something that's required. I suppose being fair to the plan in this case, it would be relatively impossible to define every potential sedentary job. So they have given broad classifications of what might be available. Okay. We'll look at it. That takes us into the second part of the problem in this case, which is the district court's, in our view, failure to adequately consider the conflict of interest in this case of the plan administrator. And it's particularly important here because we have a voluminous administrative record. It's well over 2,000 pages in the case, the vast majority of which deals with my client's medical conditions. There's the administrative layer, which is well recognized as a potential conflict of interest in these cases. But this goes on further, and in this particular case, there's a number of medical reviewers hired by UNUM in this case who also have that conflict of interest. One of them literally listed his occupation as former vice president of UNUM, medical director, and his occupation is reviewing disability claims. A second one listed his primary occupation as doing that for UNUM in this case. The vocational rehabilitation specialist is in-house employed by UNUM. In this particular case, there was no attempt made that I can find in the record to seek either an independent medical exam or a functional capacity exam, both of which were provided as optional under the plan. Now, was that the case where Code C and Stover are both full-time employees of UNUM? No. No, it was Nuren Bartlett in the third one. It escapes me, I'm sorry. But Code C, I was clear Stover actually examined your client, and I wasn't sure about Code C. Code C also examined that one. That's what I thought. I mean, my question here is, because you're right, we see a lot of these cases, and where is the stark difference between whether somebody is on payroll or is contract? Because I've heard lots of lawyers stand there and say, well, if you're on contract and you don't give them the right answer, then they're not going to renew your contract. Or if you're an independent insurance company and you don't give them the right answer, they'll contract with a different insurance company. Eventually, the money comes from the person that's paying the money. And so whatever conduit, there's always some conflict. So why is this worse than any other? Well, at least on paper, it appears the degree to which these individuals are dependent upon this particular company and the degree to which these individuals are listing their occupations as, in fact, doing this kind of work. OK, I think your time's expired, unless my colleagues have further questions. You have three minutes for rebuttal. May it please the court. Bob Parsley with Miller & Martin for Defendant Appellee Union Group Corporation. There are four issues that we have discussed in the briefs. And I would like to touch just very briefly on each of those four. The standard of review, the effect of the conflict of interest. The third issue has to do with the substantive reasonableness of the benefits decision and the waiver argument that UNIM has made with respect to that issue. I think all of these issues should be decided in UNIM's favor and the decision below should be affirmed. Regarding the standard of review, in Moss v. UNIM Life Insurance Company, 495 Federal Appendix 583, a 2012 decision by this court, which is cited in the briefs, this court addressed the exact same discretion language that is at issue, including the statement that the decision must be reasonable and based on the facts and circumstances of the case. This court held that that language warranted arbitrary and capricious review. Page 590 in footnote 2, it cites that language. I believe that Croc sets up a false dichotomy between discretion and reasonableness. Discretion is not purely subjective and that's why it must be reasonable. Discretion must be, it has a floor of being exercised reasonably. If it's reasonable, it would be arbitrary and capricious. Exactly. And I think what's happened here is I think UNIM has been very careful to track this court's precedent in its language to make sure that it's consistent with what this court has said is required to invoke arbitrary and capricious standard of review. So that issue should be affirmed. And the second issue is the conflict of interest issue. Under Glenn, the U.S. Supreme Court's case, 554 U.S. 105, conflict of interest is merely one factor to consider among others. Depending on the circumstances of the case, it can be a more important factor or a less important factor. The district judge said that he considered that, right? He did consider it, Your Honor. What happened was the magistrate judge issued a report and recommendation and cited the standard that a conflict of interest must be taken into account, but then never addressed it. Crocks objected on that ground and the district court agreed and said, you know what? The magistrate judge didn't really take this into account. I will, and did so, and said it's an insignificant factor and the decision is still reasonable and affirmed. So I think the key point here is that Unum's reviewers, it's unclear I think from the record whether they're employees or independent contractors, but the point is that Unum made intense efforts to obtain the complete medical history, relevant medical history for Crocks, provided that complete medical history to all of the reviewers, and they accounted for the complete medical history in rendering their decision. The district court found that that was a step that promoted accuracy in the determination as the Glenn case talks about, and that rendered the conflict unimportant, didn't change the decision. So I think on both of those issues, the standard overview and the conflict of interest issue, the district court was correct and should be affirmed. I'd also like to note that the only point that Crocks made about how the conflict of interest affected this decision was to say, well, you only had Unum reviewers, you didn't have an independent medical exam, and I don't think the Unum reviewers looked at the whole record. Well, they did look at the whole record. They're not required to have an independent medical exam. A paper review is perfectly appropriate depending on the case, and here Crocks had at least 16 treating and examining physicians. There was no shortage of medical history for the reviewers to rely on. So there's no other evidence in the record to support any argument about the significance of the conflict, such as claims history and that sort of thing. Did any of her physicians say that she was incapable of doing sedentary work? Under the any gainful occupation definition of disability, which is the definition at issue here, the answer is no. Eight physicians, five treating and examining physicians, and three physicians that Unum brought in to review the file said, it is our medical opinion, she is not physically disabled from doing sedentary work. She is able to do full-time sedentary work. The only decision to the contrary was a vocational assessment form filled out by nurse practitioner Sparks who works for a neurologist, a treating neurologist. She said, I'm not answering the vocational question. So she said, is she disabled? She didn't click yes or no. She said, I'm not answering it, and then said, I think she has problems being able to lift up to 10 pounds. She has tremors in her hands, but I've only seen the patient once, and I'm unsure. You say she worked for a neurologist. Did she work for Code C? Trudell. OK. Yeah. And it was a very equivocal, unclear opinion. Secondly, the hand tremors that she referred to, all the doctors have said that's distractible. In other words, the hand tremors go away when Ms. Crox's attention is focused on a task and concluded that that probably has a psychological origin, not a physical origin. So Unum, it was not required to credit that opinion over all of the other medical opinions stating that she could. It wasn't even an opinion. Excuse me? Are you talking about the nurse practitioners? Yes. Yes, Your Honor. I mean, it wasn't an opinion. It was, I don't have an opinion. That's exactly right. To the extent it was an opinion, it was properly discounted. But I think you're right, and she's not a physician, and it was very unclear what exactly she was trying to say. I will jump ahead to the ultimate issue. The denial of benefits here was reasonable. It was not arbitrary or capricious. There is substantial evidence in this very large medical record to support the decision. Dr. Stover, a specialist neurologist whom Ms. Crox's treating neurologist referred her to, to get a more definitive diagnosis, and Dr. Stover said, I think this is conversion disorder, which is psychological in origin. Now, I would like to talk for a moment about the waiver issue. We have advanced the argument that Crox has waived really any argument before this court concerning the ultimate issue, that is, the substantive reasonableness of the disability determination. The reason is that here we had a magistrate's report and recommendation, which yields kind of a double-layer appeal. It's well-settled law in this circuit that only specific objections made to a magistrate's report and recommendation are preserved for appeal to the Court of Appeals. The two issues advanced in Crox's objection were the standard of review and the conflict of interest issue. Those were the only two issues advanced as specific objections. At the very end, the conclusion of the objection to the report and recommendation, Crox did say, and the entire medical record here supports that the decision was reasonable. But there was no specific reference to the medical record, no specific reference to any of the holdings recommended by the magistrate judge. And this court has held in Robert V. Tesson 507 F. 3rd 981, which is cited in the briefs, that a general objection to a report and recommendation is the same as no objection. It's ineffective to preserve issues for review to the Court of Appeals. And that to make a specific objection requires explaining and citing specific portions of the report which counsel deems problematic. That wasn't done here with respect to the substantive issues concerning whether the medical record supports Unum's benefits denial. So we would submit that that issue is waived. I've addressed all of the issues. I'd be happy to address any questions or concerns that the court has. Any other questions, judges? If not, thank you. Thank you, Your Honor. A few minutes for rebuttal, Mr. Chancy. There are three small points that I'd like to make. The first is that no court has reviewed this plan language that includes the portion which states that the court will determine the standard of review in the case. So I can find no precedent which has addressed that previously. When your adversary said that it was exact same language in that Moss case, that didn't include that part? I don't believe it included that portion of it, Your Honor. The second part is that, as counsel noted, the following language appeared in our objection that was filed to the magistrate's report. The decision to deny plaintiff's claim is not supported by the overall medical record. Plaintiff's overall medical history as determined by the Social Security Administration supports the finding that plaintiff is disabled due to physical reasons. Counsel seems to be arguing that the brief that we filed with the magistrate, which has all the sites to all the records in it, somehow needs to be restated again in the objection to the magistrate's findings. I don't think that that's supported in the case law anywhere. We think we put that before the court properly, and so we don't agree that it was waived. Now, with respect to the conflict of interest issue, the reason that it's particularly relevant in this case is that one of UNUM's own reviewing doctors earlier in the process found that Ms. Crox was disabled based upon physical findings of all these other doctors. What happened in this case is that Ms. Crox continued to seek medical treatment on her own, trying to figure out what was wrong with her. She went for a one-time evaluation with this Dr. Stover, and that doctor concluded that she had this conversion disorder that's referenced. And that's really the basis of everything that happened after that. The problem with that is that after this doctor reached the conclusion that she had this psychiatric condition, Dr. Trudell, a neurologist, performed a series of objective tests on her. Not his observations, actual testing, and those tests confirmed that she had the condition that Dr. Stover said she did not have. UNUM then utilized its reviewing doctors who overwhelmingly utilized the fact that Dr. Stover reached this opinion in order to make its decision. They even went so far as to say, well, the Social Security Administration didn't have Dr. Stover's report when it found her disabled. But they left out completely that while that's true, the Social Security Administration didn't have the later objective testing that was performed on her, which confirmed she had these conditions. Who were the people that referred to her tremors as distractible? Well, Dr. Stover did, and one other one did. But there's a whole constellation of symptoms this lady has besides just hand tremors. And the problem here is, as this Court noted in the Darlan v. Fortas case, which I believe Judge Seiler sat on, the regular reliance on the same medical experts is in and of itself evidence of a conflict of interest. So we would respectfully suggest to the Court that in this case, when you look at the totality of the evidence, it's clear that it was an arbitrary decision to rely on that particular portion of her medical record. Thank you, Counsel. That case will be submitted. The remaining cases will be submitted on briefs, and you may adjourn.